**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LEON R. HOUSE, JR.,**

                      Plaintiff,                        5:11-cv-915
                                                                         (GLS)
             v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

                      Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Olinsky Law Group | KAREN S. SOUTHWICK, ESQ. |
| 300 S. State Street | |
| 5th Floor, Suite 520 | |
| Syracuse, NY 13202 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | SUSAN J. REISS |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

**<u>MEMORANDUM-DECISION AND ORDER</u>**

## I. **Introduction**

Plaintiff Leon R. House, Jr. challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income ("SSI"), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering House's arguments, the Commissioner's decision is reversed and remanded.

## II. **Background**

On January 15, 2008, House filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since December 20, 2006. (*See* Tr.[1] at 42-43, 109-22.) After his applications were denied, (*see id.* at 60-65), House requested a hearing before an Administrative Law Judge (ALJ), which was held on June 9, 2010. (*See id.* at 16-40, 66.) On July 29, 2010, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-6, 44-56.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 9.)

House commenced the present action by filing his Complaint on August 4, 2011, wherein he sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 14, 17.)

## III. Contentions

House contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 14 at 16-25.) Specifically, House claims that: (1) the ALJ failed to properly develop the record; (2) the residual functional capacity (RFC) determination is "not supported by substantial evidence and is the product of legal error"; (3) his credibility was improperly assessed; and (4) the step five determination "is unsupported by substantial evidence and is the product of legal error." (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is supported by substantial evidence. (*See* Dkt. No. 17 at 5-23.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (*See* Dkt.

3

No. 14 at 3-14; Dkt. No. 17 at 2.)

## V. **Standard of Review**

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. **Discussion**

Among other arguments, House contends that the ALJ violated his duty to develop the record by failing to order a consultative internal medical examination despite rejecting his treating physician's opinion. (*See* Dkt. No. 14 at 16-17.) The Commissioner counters that a consultative exam was not necessary because, in the absence of such an exam, the record was sufficient for the ALJ to render a determination about House's functional capacity. (*See* Dkt. No. 17 at 5-8.) The court agrees with House that remand is necessary.

---

[2] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical.

It is well established that the ALJ has an obligation to thoroughly develop the record, considering "all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p, 61 Fed. Reg. 34, 474, 34,477 (July 2, 1996); *accord Falcon v. Apfel*, 88 F. Supp. 2d 87, 90-91 (W.D.N.Y. 2000); *see, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). However, where there are no obvious gaps, and the record presents "a 'complete medical history,'" the ALJ is under no duty to seek additional information before rejecting a claim. *Rosa*, 168 F.3d at 79, n.5 (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). Moreover, the ALJ is afforded discretion in determining whether a consultative exam is warranted. *See* 20 C.F.R. §§ 404.1519a, 416.919a. As with development of the record generally, "[a] consultative examination is unnecessary if the record contains sufficient information on which to base the decision." *Hall ex rel. M.M. v. Astrue*, No. 11-CV-6317T, 2012 WL 2120613, at *4 (W.D.N.Y. June 11, 2012).

In this case, the record contains treatment records and opinions from plaintiff's treating physician, Warren Wulff, as to House's functional limitations. (*See* Tr. at 344-83, 399-458, 470-91, 518-23.) In addition, the

5

record includes treatment records from New York Pain Center and physical therapy progress notes, as well as laboratory findings such as x-rays, MRIs and a myelogram. (*See id.* at 198-206, 318-29, 339, 341, 384-87, 395-98, 433, 440, 443, 446, 451-52, 454, 457, 465-67, 522.) With respect to House's functional limitations, Dr. Wulff opined that House could lift up to twenty pounds frequently, push and pull up to thirty pounds, and, in an eight-hour day, stand and walk for less than two hours and sit for less than six hours. (*See id.* at 531-32.) Further, Dr. Wulff reported that House could never climb, balance, kneel, crouch, crawl, or stoop and had environmental limitations with respect to extreme temperatures, vibration, and hazards. (*See id.* at 532, 534.)[3] The ALJ found that Dr. Wulff's opinion was "not fully credible" and determined that House retained the RFC to perform the full range of sedentary work.[4] (*Id.* at 50, 52.)

---

[3] Dr. Wulff also submitted an affirmation stating that House met Listing 1.04A. (*See* Tr. at 530.) However, House does not challenge the ALJ's determination that he did not meet this listing. (*See id.* at 50.)

[4] Sedentary work "involves lifting no more than ten pounds at a time." 20 C.F.R. §§ 404.1567(a), 416.967(a). In addition, the full range of sedentary work requires that an individual be able to stand and walk for a total of approximately two hours and remain in a seated position for approximately six hours in an eight-hour work day. *See* SSR 96-9p, 61 Fed. Reg. 34,478-01, 34,481-82 (July 2, 1996).

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c).  Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  *Id.* §§ 404.1527(c)(2), 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Notably, "'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'"  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983)).  Accordingly, "[w]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a

7

physician who [submitted an opinion to or] testified before him." *Id.* (internal quotation marks and citation omitted).

Here, the ALJ considered the relevant factors and properly explained his reasoning for discounting the weight given to Dr. Wulff's opinion. Specifically, the ALJ explained that the opinion was based solely on House's subjective allegations and not supported by the objective medical evidence. (*See* Tr. at 52.) Indeed, Dr. Wulff only completed a fill-in-the-blank medical source statement, (*see id.* at 526-29, 531-34), which is "marginally useful for purposes of creating a meaningful and reviewable factual record." *Halloran*, 362 F.3d at 31 n.2; *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")

Moreover, Dr. Wulff's own treatment records do not support his restrictive opinion. Specifically, on numerous occasions Dr. Wulff noted that House was in no acute distress, walked comfortably, without the need of any assistive device, and stood tall and straight. (*See* Tr. at 348-49, 359, 376, 378, 381, 405-06, 423, 429, 432, 439, 446, 471). Dr. Wulff reported that House was able to climb onto the examination table and

8

balance on his toes and heels. (*See id.* at 345, 349, 352, 359, 381, 406, 429, 432, 446, 471.) According to Dr. Wulff, House had normal muscle strength with no atrophy or asymmetry in his back or legs and no motor loss. (*See id.* at 345, 348-49, 352-53, 356, 359-60, 374, 381, 405-06, 418, 420, 423, 429, 432, 436, 439, 484.) House's lumbar flexibility was found to be only mildly to moderately limited, his reflexes were normal, and he had strong dorsiflexion and plantar flexion of his feet. (*See id.* at 345, 349, 352, 356, 359-60, 368, 371, 374, 378, 381, 406, 426, 446, 449, 474, 484, 490.) Further, although at times House had "mildly" or "slightly" positive straight leg raising on one or both lower extremities, (*see id.* at 345, 352, 374, 378, 382, 457, 471, 474), more often Dr. Wulff reported negative bilateral straight leg raising. (*See id.* at 349, 357, 360, 368, 371, 382, 406, 432, 435, 439, 443, 449, 454, 490.)

In addition to treatment notes, x-rays and MRI's of House's back do not support Dr. Wulff's opinion. Specifically, in November 2008, after House underwent back surgery, x-rays of his lumbar spine revealed a laminectomy and fusion that was healing well with intact hardware. (*See id.* at 431-33.) Thereafter, in January, March, and April 2009, x-rays displayed that the bone graft was in a good position and there were no

9

signs of hardware loosening. (*See id.* at 440, 443, 446.) An MRI taken in April 2009 revealed "grade [one] spondylollsthesis" resulting in mild neural foraminal stenosis, but no canal stenosis. (*Id.* at 451.) Lastly, in March 2010, House underwent a lumbar myelogram which revealed anterolisthesis of L4 on L5, but no significant central canal or neural foraminal stenosis, and good position of the fusion hardware with no evidence of loosening. (*See id.* at 467.)

In light of the above evidence, the weight afforded to Dr. Wulff's opinion is supported by substantial evidence. However, the record contains no other assessment of House's functional limitations by an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Notably, "'where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment.'" *Walker v. Astrue*, No. 08-CV-0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (quoting *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)). Otherwise, although the RFC determination is an issue reserved for the commissioner, *see* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c), "'an ALJ is not qualified to assess

a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.'" *Dailey v. Astrue*, No. 09-CV-0099, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)). Because there is no medical source opinion supporting the ALJ's finding that House can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c); *see also Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand).

Because House's remaining contentions may be impacted by the subsequent proceedings directed by this Order, it would be improper for the court to consider them at this juncture.

### VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and

11

**REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 1, 2013
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court